James L. Ahlstrom, # 8704
PARR BROWN GEE & LOVELESS, P.C.
185 South State Street, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Fax: (801) 532-7750
E-mail:  jahlstrom@parrbrown.com

Attorneys for plaintiff Acceleration Products, Inc. dba Athletic Republic

_____

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| ACCELERATION PRODUCTS, INC. dba ATHLETIC REPUBLIC, a North Dakota corporation, | **COMPLAINT** |
| Plaintiff, | Civil No. 2:14-cv-00252-DB |
| vs. | Judge: Dee Benson |
| ARIKOTA, INC., an Arizona corporation; ECLECT, LLC, an Arizona limited liability company; MICHAEL BIRKELAND, an individual; CAROL BIRKELAND, an individual; and KRISTOPHER BIRKELAND, an individual; | |
| Defendants. | |

Acceleration Products, Inc. ("API"), for its Complaint against Defendants Arikota, Inc.,

Eclect, LLC, Michael Birkeland, Carol Birkeland, and Kristopher Birkleland (collectively,

"Defendants"), states and alleges as follows:

1

## THE PARTIES

1.      Acceleration Products, Inc. ("API") is a North Dakota corporation with its principal place of business at 1389 Center Drive, Suite 100, Park City, Utah.  API offers individuals and business entities franchises for the establishment and operation of franchised performance sports training centers under the Athletic Republic® trademark and other related trademarks.

2.      On information and belief, Arikota, Inc. ("Arikota") is an Arizona corporation with its principal place of business at 3771 East Tonto Place, Chandler, Arizona.  Arikota owns and operates a performance sports training center in Tempe, Arizona (the "Tempe Training Center").

3.      On information and belief, Eclect, LLC ("Eclect") is an Arizona limited liability corporation with its principal place of business at 8270 South Kyrene Road, Suite B106, Tempe, Arizona.  Eclect owns and operates a performance sports training center in Scottsdale, Arizona (the "Scottsdale Training Center").

4.      On information and belief, Michael Birkeland is an individual who resides at 3771 East Tonto Place, Chandler, Arizona.  Upon further information and belief, he is an owner, agent, and President of Arikota, and he is an owner, officer and agent for Eclect.

5.      On information and belief, Carol Birkeland is Michael Birkeland's spouse and also resides at 3771 East Tonto Place, Chandler, Arizona.  Upon further information and belief, she is an owner and officer of Arikota, and she is an owner and officer of Eclect.

6.      On information and belief, Kristopher Birkeland is the son of Carol and Michael Birkeland.  On information and belief Kristopher Birkeland resides at 2155 East Liberty Lane,

2

#141, Phoenix, Arizona.  Upon further information and belief, he is an owner, officer and/or director of Arikota, and he is an owner and officer of Eclect.

## JURISDICTION AND VENUE

7.     The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.  This Court therefore has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

8.     API seeks to stop Defendants' unlawful trademark infringement under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*  This Court thus also has jurisdiction over this case pursuant to 28 U.S.C. § 1331, as API's claims arise in part under federal law.  The Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1337.

9.     Venue is proper in this District pursuant to Paragraph 15.D of the Eclect Franchise Agreement, which provides that "[a]ny cause of action, claim, suit or demand . . . must be brought in the Federal District Court for the District of Utah or in the State courts located in Salt Lake City, Utah.  The parties irrevocably submit themselves to, and consent to, the exclusive jurisdiction of said courts."  Additionally, venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this District and/or 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over all the defendants.

10.     The Court has *in personam* jurisdiction over Defendants pursuant to Utah's Nonresident Jurisdiction Act, Utah Code § 78B-3-201 *et seq*. because Defendants transacted business with this state, and because Defendants caused injury within this state.  In addition, Defendants each have engaged in certain minimum contacts involving the State of Utah to make the exercise of jurisdiction foreseeable and fair in this Court.

## BACKGROUND FACTS

### The Parties' Franchise Agreements and Personal Guarantees

11.     API has spent twenty-four years and extensive resources developing a unique system to operate performance sports training centers providing high level training to athletes to maximize their full athletic potential and increase their speed, agility, power and competitive capabilities using an evidence -based training system and proprietary equipment under the Athletic Republic® trademark and other related trademarks (the "Athletic Republic System" or "System").  This System requires use of trademarks registered to API, equipment in which API holds patents, copyrighted fitness training protocols and other copyrighted materials that API has registered with the U.S. Patent and Trademark Office, and specialized training and know-how that API has developed.

12.     API licenses its unique protocols and business and training system pursuant to franchise agreements, which authorize franchisees to purchase and use its patented equipment, borrow and use its copyrighted materials (including but not limited to an extensive Manual containing thousands of pages of training protocols), use its trademarks, access its education and certification programs that teach how to use the system, and use its confidential information and know-how, subject to restrictions and conditions set forth in the franchise agreements.  The franchise system is known to the public as the Athletic Republic® training centers.

13.     API and Defendants entered into two franchise agreements through which API granted Defendants the right to operate two Athletic Republic® Training Centers through their corporate entities, Arikota and Eclect.

14.     On May 28, 2008, API and Arikota entered into a Franchise Agreement granting Arikota the right to operate the Tempe Training Center (the "Tempe Franchise Agreement").

4

15.     The Tempe Franchise Agreement has a term of ten years, with an option for two five-year renewals.

16.     Michael Birkeland and Carol Birkeland personally guaranteed Arikota's performance under the Tempe Franchise Agreement.  Pursuant to their guarantees, Michael Birkeland and Carol Birkeland agreed to "become surety and guarantor for the payment of all amounts and the performance of the covenants, terms and conditions in the Agreement, to be paid, kept and performed by the Franchisee, including the dispute resolution provisions of the Agreement."  Michael Birkeland and Carol Birkeland also "agree[d] to be personally bound by each and every condition and term contained in the Agreement and agree[d] that this Personal Guaranty will be construed as though the undersigned assumed all the Franchisee's obligations under the Agreement."

17.     On January 29, 2010, API and Eclect entered into a Franchise Agreement granting Eclect the right to operate the Scottsdale Training Center (the "Scottsdale Franchise Agreement").

18.     The Scottsdale Franchise Agreement has a term of ten years, with an option for two five-year renewals.

19.     Michael Birkeland and Kristopher Birkeland personally guaranteed Eclect's performance under the Scottsdale Franchise Agreement.  Pursuant to their guarantees, Michael Birkeland and Kristopher Birkeland agreed to "become surety and guarantor for the payment of all amounts and the performance of the covenants, terms and conditions in the Agreement, to be paid, kept and performed by the Franchisee, including the dispute resolution provisions of the Agreement."  Michael Birkeland and Kristopher Birkeland also "agree[d] to be personally bound by each and every condition and term contained in the Agreement and agree[d] that this Personal

Guaranty will be construed as though the undersigned assumed all the Franchisee's obligations under the Agreement."

20.      In addition, Michael, Carol, and Kristopher Birkeland signed confidentiality agreements in connection with the Tempe and Scottsdale Franchise Agreements.

21.      The Tempe Franchise Agreement and the Scottsdale Franchise Agreement will hereinafter be referred to as the "Franchise Agreements" and are nearly identical to one another. Michael Birkeland, Carol Birkeland, and Kristopher Birkeland will hereinafter be referred to as the "Guarantors."

<u>**Franchised Location Territory and Franchise Fees**</u>

22.      Pursuant to Paragraph 2.C of the Franchise Agreements, Defendants had an exclusive right to operate Athletic Republic® Training Centers within the "Protected Territor[ies]," as described in Appendix D of the Franchise Agreements.

23.      Pursuant to Paragraphs 4.B and 4.D of the Franchise Agreements, Defendants agreed to pay API a royalty fee (the "Royalty") in an amount equal to 6% of gross sales, and subject to a contractual minimum royalty, no later than ten days after the end of each calendar quarter.

24.      Pursuant to Paragraphs 4.C and 4.D of the Franchise Agreements, Defendants agreed to pay API a quarterly marketing fee (the "Marketing Fee") in an amount equal to 2% of gross sales no later than ten days after the end of each calendar quarter.

25.      Pursuant to Paragraph 5.E, Defendants agreed that unpaid amounts owed by Defendants to API would "bear interest at the rate of 18% per year or the maximum rate permitted by applicable law, whichever is lower."  Defendants also agreed that they would

reimburse API for "all costs and expenses incurred in the collection of unpaid amounts, including attorneys' fees."

### Covenants Not to Compete and Confidentiality

26.    Prior to becoming Athletic Republic® franchisees, Defendants did not have experience as athletic trainers and had no prior experience running training centers.

27.    API provided extensive training to Defendants and their employees regarding the athletic training protocols and the operation of a training center business, conditioned upon the restrictions set forth in the Franchise Agreements, including but not limited to confidentiality and non-compete obligations.

28.    Pursuant to Paragraph 11.A of the Franchise Agreements, Defendants agreed that they would not during the term of the agreements "own, operate, lease, franchise, engage in, be connected with, have an interest in, or assist any person or entity in any sports training or health fitness business which is located within the Protected Territory or within a 25 miles radius of any [Athletic Republic] training center."  (Hereinafter referred to as the "In-Term Non-Compete.")

29.    Pursuant to Paragraph 11.B of the Franchise Agreements, Defendants agreed that they would not, "directly or indirectly, for a period of 2 years after the . . . termination of this Agreement . . . own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in or assist any person or entity engaged in any sports training or health fitness business that is located within the Protected Territory or within a 10 mile radius of any [Athletic Republic] training center" after the agreements were terminated or expired. (Hereinafter referred to as the "Post-Term Non-Compete.")

30.    Pursuant to Paragraph 11 of the Franchise Agreements, Defendants agreed to pay API "as a fair and reasonable liquidated damages (but not as a penalty) $50,000" in the event one

7

or more Defendants violated the In-Term or Post-Term Non-Competes. Defendants agreed that "this amount is for the damages that [API] will suffer for the violations to the covenants in Section 11, and that it would be difficult to calculate with certainty the amount of damage that [API] will incur" as of the time of entering into the Franchise Agreements.

31.      Pursuant to Paragraph 8.G of the Franchise Agreements, Defendants agreed that they would not use API's confidential information, including but not limited to its know-how, protocols, methods, processes, and copyrighted Manuals "in any other business or in any manner not specifically authorized or approved in advance in writing" by API.

### Other Franchise Provisions

32.      Paragraph 13.B provides that the Franchise Agreements may be terminated immediately if, in relevant part:

- Defendants use Confidential Information without API's authorization;

- Defendants violate their obligations not to compete under Section 11.A;

- Defendants commit any default "that materially impairs the goodwill associated with any of the Trademarks;"

- Defendants "fail, refuse or neglect to pay Royalties or Marketing Fees to [API] within 30 days after the Royalties or Marketing Fees become due."

33.      Pursuant to Paragraph 5.G, Defendants agreed that API was authorized to inspect Defendants' books and records related to the Training Centers.

34.      Pursuant to Paragraph 5.C, Defendants agreed that they would operate the Training Centers "so that [they are] clearly identified as a member of [API's] network."

35.      Section 5 of the Franchise Agreements restrict Defendants' use of API's copyrights, patents rights, trademarks, and copyrighted and confidential information to operation of their training center as an Athletic Republic® franchised location.

8

36.     Pursuant to Paragraph 4.F of the Franchise Agreements, Defendants agreed to provide API with quarterly Financial Statements and annual balance sheets, profit and loss statements, and cash flow statements (collectively, the "Financial Statements").

### Post-Termination Obligations of Franchise Agreements

37.     Defendants' obligations upon termination of the Franchise Agreements are set forth in Article 14, which provides that, upon termination of the Franchise Agreements, Defendants would:

- "[I]mmediately cease to operate the Training Center;"

- "[I]mmediately and permanently cease to use, in any manner, all Confidential Information, including Manuals, protocols, methods, procedures and techniques used by or associated with the System, the Trademarks and the distinctive forms, trade dress, slogans, signs, symbols, logos and devices associated with the System;"

- "[I]mmediately comply with the post-term non-compete obligations under Section 11.B;"

- "[A]ssign to API the telephone numbers, facsimile numbers, websites, electronic mail addresses and customer lists used in the operation of the Franchised Business;"

- "[I]mmediately pay all sums owed to [API] . . . and such sums shall include all damages, losses, costs and expenses (including attorneys' fees) incurred by [API] as a result of [Defendants'] default;"

- "[C]ontinue to comply with the confidentiality provisions of Section 8.G;"

- Within ten days of the termination of the Franchisee Agreements, remove all signage or other materials that bears API's Trademarks or is confusingly similar to the Trademarks;

- Alter the appearance of the Training Centers to "differentiate the Training Center unmistakably from duly licensed Athletic Republic training centers," including at least removing all signage, altering the color scheme and décor, and discontinue using items bearing API's Trademarks.

- Pay to API "all damages, losses, costs and expenses, including attorneys' fees, incurred by [API] subsequent to the termination or expiration of this Agreement

in obtaining injunctive or other relief for the enforcement of any term, covenant, or provision of this Agreement."

38.     Pursuant to Paragraph 14.B of the Franchise Agreements, Defendants agreed that API would have the right to re-purchase all equipment purchased by Defendants pursuant to a set formula for determining the price of same.

**Injunctive Relief, Specific Performance, and Attorneys' Fees**

39.     Pursuant to Paragraph 15.C of the Franchise Agreements, Defendants agreed that their failure to fulfill their obligations under the Franchise Agreements "may cause irreparable damages to [API] or other franchisees."  Accordingly, Defendants agreed that "in the event of a breach . . . of the terms of this Agreement by [Defendants], [API] will be entitled to an injunction restraining such breach or to a decree of specific performance, without showing or proving any actual damage, together with recovery of reasonable attorneys' fees and other costs incurred in obtaining said equitable relief."

40.     Pursuant to Paragraph 15.C of the Franchise Agreements, Defendants also agreed that API would have "the right to begin a civil action against [Defendants] or take other appropriate action for the following reasons: to collect sums of money due to [API]; to compel [Defendants'] compliance with trademark standards and requirements to protect the goodwill of the Trademarks; to compel [Defendants] to compile and submit required reports to [API]; or to permit evaluation or audits authorized by this Agreement."

41.     Pursuant to Paragraph 15.G, Defendants agreed that "[t]he prevailing party in any action or proceeding arising under, out of, in connection with, or in relation to this Agreement will be entitled to recover its reasonable attorneys' fees and costs."

42.     Paragraph 16.D of the Franchise Agreements provides that any provisions of the Franchise Agreements adjudicated to be invalid or unenforceable are separable so that the remainder of the Franchise Agreements remains in full force and effect.

### Guarantor Liability

43.     As owners of the Franchisees, Defendants Michael Birkeland, Carol Birkeland, and Kristopher Birkeland agreed "to be personally bound by each and every term contained in" the Franchise Agreements and agreed that their personal guarantees would "be construed as though the undersigned and each of them executed an agreement containing the identical terms and conditions of" the Franchise Agreements.

### Defendants' Defaults

44.     Arikota failed to pay Royalties and Marketing Fees for the second, third, and fourth quarters of 2013 and for the first quarter of 2014.

45.     Eclect failed to pay Royalties and Marketing Fees in 2013 and 2014.

46.     Defendants failed to provide Financial Statements in 2013 and 2014.

47.     Pursuant to Paragraph 11.A of the Franchise Agreements, Defendants breached their covenants not to compete during the term of the Franchise Agreements by failing to operate their Training Centers as Athletic Republic® locations, and instead they began to pass off their training system to the public as belonging to "The Rise" (an entity, concept, system, process, or other construct that is not part of the Athletic Republic Training Centers or rights contracted pursuant to the Franchise Agreements)

48.     On December 23, 2013, API received an email from a potential franchisee, forwarding an email, also dated December 23, 2013, that he received from Kristopher Birkeland.

11

The subject line of the email stated "Athletic Republic is now The Rise."  The body of the email explained:

> Athletic Republic has officially changed names to The Rise.  We know this may come as a shock but we want all of you to know that we are under the same ownership, with the same quality staff and same quality customer care.  This change is a step forward for us as a business and will allow us to continue our growth as a facility dedicated to training athletes to their maximum athletic potential.
>
> We will have the same phone number but will be transitioning our website and emails to the domain address of www.therisenation.com.  Please be patient as we complete our new website.  Please continue to use the email address you may currently have for each staff member.  We want to hear from you and answer your questions as many of you know we are highly accessible and very proud of our excellent customer service.  We would prefer to speak with you in person or on the phone if you have questions about this change over.  We will be back in our facilities at 10 am on Thursday 12/26 if you would like to call or come down.  If you are a current client of ours you will receive a follow up email with a few brief details that pertain to each of you.
>
> As a staff we are excited about our future and look forward to the opportunity of working with as many of you in that future.

49.     In addition, Defendants displayed API's trademarked and copyrighted slogans and marketing materials as though they originated from the competitive venture "The Rise."

50.     By written notice dated March 28, 2014, API provided Defendants with written notices of termination ("Termination Notices") based on Defendants' defaults under Paragraph 13.B of the Franchise Agreements.

51.     The Termination Notices reminded Defendants that they continued to be bound by post-termination obligations under the Franchise Agreements.

52.     Defendants have failed to pay any of the amounts owed API for Royalty and Marketing Fees from 2013 through the termination of the Franchise Agreements.

53.     Defendants continue to operate the Tempe Training Center and the Scottsdale Training Center as "The Rise" locations, using certain of API's trademarked and copyrighted slogans and marketing materials.

54.     Defendants' repeated failures to live up to their contractual obligations have left API no alternative but to commence this action.

**COUNT I**
**INJUNCTIVE RELIEF**

55.     Plaintiff restates and incorporates each of the foregoing paragraphs as if fully set forth herein.

56.     Defendants have breached the terms of the Franchise Agreements by continuing to operate the Training Centers, despite the termination of the Franchise Agreements.

57.     Unless Defendants are enjoined from continuing to operate the Training Centers, API will sustain irreparable harm because upon information and belief Defendants continue to use and/or reproduce derivative works based upon API's registered copyrights, use API's registered copyrights and trademarks in their marketing materials and signage, and use API's know-how and training; Defendants' continued use damages the goodwill associated with the Athletic Republic System.

58.     API's franchise system as a whole will be irreparably damaged if Defendants are permitted to continue to breach their post-termination obligations under the Franchise Agreements.

59.     API has invested considerable resources in the development of its System and has taken reasonable steps to maintain the confidentiality of same.

60.     API does not have an adequate remedy at law.

61.     Defendants have acknowledged that API's damages are irreparable and have agreed that injunctive relief is necessary under the terms and conditions of the Franchise Agreements.

62.     Defendants should therefore be permanently enjoined from breaching the Post-Term Non-Compete provisions and confidentiality provisions of the Franchise Agreements and should be ordered to immediately cease all business operations.

63.     Defendants should be ordered to pay API's attorneys' fees and costs incurred in bringing this action.

## COUNT II
## ARIKOTA'S FAILURE TO PAY AMOUNTS OWED TO API
### (Against Defendants Arikota, Michael Birkeland, and Carol Birkeland)

64.     Plaintiff restates and incorporates each of the foregoing paragraphs as if fully set forth herein.

65.     API and Defendant Arikota are parties to a valid, enforceable and binding contract – the Tempe Franchise Agreement.

66.     API and Defendants Michael Birkeland and Carol Birkeland are parties to a valid, enforceable and binding guaranty contracts.

67.     Defendants Arikota, Michael Birkeland, and Carol Birkeland have breached the terms of the Tempe Franchise Agreement and guarantees by, including but not limited to, failure to pay Royalties and Marketing Fees required under the Tempe Franchise Agreement.

68.     As of March 31, 2014 Defendants Arikota, Michael and Carol Birkeland owed in excess of $69,000 in royalties, marketing fees, and finance fees, and damages continue to increase.

14

69.     As a direct result of Defendants' Arikota, Michael Birkeland, and Carol Birkeland's breaches of contract, Defendants Arikota, Michael Birkeland, and Carol Birkeland are liable to API, jointly and severally, for unpaid Royalties and Marketing Fees in an amount to be determined at trial, plus costs, disbursements, interest, and attorneys' fees.

<u>**COUNT III**</u>
<u>**ECLECT'S FAILURE TO PAY AMOUNTS OWED TO API**</u>
<u>**(Against Defendants Eclect, Michael Birkeland, and Kristopher Birkeland)**</u>

70.     Plaintiff restates and incorporates each of the foregoing paragraphs as if fully set forth herein.

71.     API and Defendant Eclect are parties to a valid, enforceable and binding contract – the Scottsdale Franchise Agreement.

72.     API and Defendants Michael Birkeland and Kristopher Birkeland are parties to a valid, enforceable and binding guaranty contracts.

73.     Defendants Eclect, Michael Birkeland, and Kristopher Birkeland have breached the terms of the Scottsdale Franchise Agreement and guarantees by, including but not limited to, failing to pay Royalties and Marketing Fees required under the Scottsdale Franchise Agreement.

74.     As of March 31, 2014 Defendants Eclect, Michael and Kristopher Birkeland owed in excess of $126,000 in royalties, marketing fees, and finance fees, and damages continue to increase.

75.     As a direct result of Defendants' Eclect, Michael Birkeland, and Kristopher Birkeland's breaches of contract, Defendants Eclect, Michael Birkeland, and Kristopher Birkeland are liable to API, jointly and severally, for unpaid Royalties and Marketing Fees in an amount to be determined at trial, plus costs, disbursements, interest, and attorneys' fees.

4824-3180-6234

<u>COUNT IV</u>
<u>ARIKOTA'S AND ECLECT'S FAILURE TO PAY LIQUIDATED DAMAGES</u>

76.     Plaintiff restates and incorporates each of the foregoing paragraphs as if fully set forth herein.

77.     Pursuant to Paragraph 11 of the Franchise Agreements, upon Defendants' breach of their In-Term Non-Compete, Defendants agreed to pay API $50,000 as liquidated damages, and not as a penalty, as a reasonable estimate of the probable damages that API would suffer (the "Liquidated Damages").  Guarantors agreed to be personally liable for this amount.

78.     Accordingly, Defendants Arikota, Michael and Carol Birkeland owe Plaintiff Liquidated Damages pursuant to the Tempe Franchise Agreement for their violation of the In-Term Non-Compete.

79.     Accordingly, Defendants Eclect, Michael and Kristopher owe Plaintiff Liquidated Damages pursuant to the Scottsdale Franchise Agreement for their violation of the In-Term Non-Compete.

80.     As a direct result of Defendants' breach of their In-Term Non-Compete, Defendants are liable to API, jointly and severally, for liquidated damages, plus costs, disbursements, interest, and attorneys' fees in an amount to be determined at trial.

<u>COUNT V</u>
<u>BREACH OF CONTRACT: FAILURE TO PAY ATTORNEYS' FEES</u>

81.     Plaintiff restates and incorporates each of the foregoing paragraphs as if fully set forth herein.

82.     Pursuant to Paragraph 14.C of the Franchise Agreements, Defendants agreed to compensate API for any attorneys' fees and costs it incurring in enforcing Defendants' post-

4824-3180-6234

termination obligations under the Franchise Agreements.  Guarantors also agreed to compensate API for this amount.

83.     API has been forced to commence this action to collect the amounts owed by Defendants under the Franchise Agreements.

84.     API is entitled to an award of its attorneys' fees and costs incurred in pursuing its claims against Defendants, in an amount to be proven at trial.

## COUNT VI
## SPECIFIC PERFORMANCE

85.     Plaintiff restates and incorporates each of the foregoing paragraphs as if fully set forth herein.

86.     Pursuant to Paragraph 4.F of the Franchise Agreements, Defendants agreed to provide API with quarterly Financial Statements and annual balance sheets, profit and loss statements, and cash flow statements.

87.     Pursuant to Paragraph 4.G of the Franchise Agreements, Defendants agreed that API would have "the right at all times during the business day to enter the premises where [Defendants'] books and records relative to the Training Center are kept and to evaluate, copy and audit such books and records" (the "Audit Rights").

88.     Defendants have failed to provide Financial Statements or other accounting records to API despite request.

89.     Pursuant to Paragraph 14.A of the Franchise Agreements, Defendants agreed that, upon termination of the Franchise Agreements, Defendants would "immediately return to [API] . . . all of the ThrowingCords, KickingCords, PlyoCords, HittingCords, SprintCords, PowerCords, Hamstring Cords, and all other cords used at the Training Center" (collectively, the "Cords").

17

90.    As of the date of the filing of this Complaint, Defendants have failed to return the Cords to API.

91.    Pursuant to Paragraph 14.A of the Franchise Agreements, Defendants agreed that, upon termination of the Franchise Agreements, Defendants would "immediately and permanently cease to use, in any manner, all Confidential Information, including Manuals, protocols, methods, procedures and techniques used by or associated with the System, the Trademarks and the distinctive forms … slogans, … symbols, … and devices associated with the System."

92.    As of the date of the filing of this Complaint, upon information and belief, Defendants have continued to operate their training centers using protocols, methods, procedures and techniques associated with the Athletic Republic System; Defendants also continue to use certain of API's trademarks and distinctive slogans, symbols and devices associated with the Athletic Republic System.

93.    Pursuant to Paragraph 14.B of the Franchise Agreements, Defendants agreed that upon termination of the Franchise Agreements, API would have the option to re-purchase "all or any portion of the equipment purchased by [Defendants]" from API (the "Repurchase Option").

94.    On March 28, 2014 API notified Defendants that it would exercise its Repurchase Option.

95.    Defendants have stated that they will not allow API to repurchase the equipment.

96.    As of a result of Defendants' failure to provide Financial Statements, API is entitled to an order requiring Defendants' specific performance of their Audit Obligation.

97.    As of a result of Defendants' continued use of all or portions of API's System, API is entitled to an order requiring Defendants to cease using protocols, methods, procedures

4824-3180-6234

and techniques associated with the Athletic Republic System, as well as any and all of API's trademarks and distinctive slogans, symbols and devices associated with the Athletic Republic System.

98.     As of a result of Defendants' failure to comply with API's Repurchase Option, API is entitled to an order requiring Defendants to take any and all steps necessary to sell the equipment to API pursuant to the Repurchase Option.

## COUNT VII
## INFRINGEMENT OF REGISTERED MARK: 15 U.S.C. § 1141

99.     Plaintiff restates and incorporates each of the foregoing paragraphs as if fully set forth herein.

100.     Plaintiff owns a valid and subsisting federal registration for the UNLEVEL THE PLAYING FIELD® trademark, registration No. 3,499,848 (the "Mark").

101.     Pursuant to Paragraph 5 of the Franchise Agreements, Defendants agreed that API owned its trademarks, including the Mark.

102.     Pursuant to Paragraph 5.B of the Franchise Agreements, Defendants agreed that their use of the Mark was subject to the terms and conditions set forth in the Franchise Agreements.  Defendants also agreed that they would not, during or after the term of the Franchise Agreements, "do anything directly or indirectly which would infringe upon, harm, or contest [API's] rights in the Trademarks . . . or the goodwill associated with the Trademarks."

103.     Upon information and belief, Defendants have used the Mark in promotion and/or advertising and/or sale in commerce of sports training or health fitness services that are not sold as part of the Athletic Republic System and subsequent to their termination as franchisees.

104.     Due to Defendants' infringement of API's federally registered Mark, customers are likely to be induced to purchase sports training or health fitness services from Defendants in

4824-3180-6234

the belief that those services are those approved of and associated with API and its unique business system.

105.    Defendants have used reproductions, counterfeits, copies, or colorable imitations of API's registered Mark in connection with the sale, offering for sale, or advertising of services in commerce, which is likely to cause confusion, or to cause mistake, or to deceive purchasers of Defendants' services.

106.    Defendants' use of the Mark following termination of the Franchise Agreements constitutes federal trademark infringement in violation of 15 U.S.C. § 1141(a).

107.    Unless enjoined, Defendants' infringement of API's Mark and Defendants' advertising, which includes words and other symbols that are reproductions, counterfeits, copies, or colorable imitations of API's registered Mark, and Defendants' injections of such services into commerce bearing such Mark, will result in the loss of distinctiveness of API's Mark and the loss of goodwill and reputation attendant thereto.

108.    As a direct result of Defendants' actions, as described in the preceding paragraphs, API has been and is being damaged and has suffered and will continue to suffer irreparable injury.

109.    Plaintiff has no adequate remedy at law.

110.    Unless the Court enjoins Defendants from such activity, Defendants will persist in the infringing use of the API Mark.

111.    Plaintiff is entitled to a permanent injunction against Defendants' continued use of the API Mark in connection with the offer and sale of sports training or health fitness services, to an account of Defendants' earnings, and to recover treble damages and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants in this action as follows:

1.      For a permanent injunction enjoining Defendants and their members, agents, servants, employees, and attorneys, and all other persons who act in concert or privity in participation with Defendants, from operating or participating in the operation of any sports training or health fitness business in violation of the Post-Termination Non-Compete provisions of the Franchise Agreements;

2.      For an order requiring Defendants to specifically perform their Audit Obligation in order to allow API to determine the amount of under-reported gross revenues prior to the termination of the Franchise Agreements;

3.      For an order requiring Defendants to cease using protocols, methods, procedures and techniques associated with the Athletic Republic System, as well as any and all trademarks and distinctive slogans, symbols and devices associated with the Athletic Republic System;

4.      For an order requiring Defendants to specifically perform their obligation to return API's equipment pursuant to the Repurchase Option;

5.      For an award of damages equal to the unpaid Royalties, Marketing Fees, and Liquidated Damages;

6.      For a permanent injunction enjoining Defendants and their members, agents, servants, employees, and attorneys, and all other persons who act in concert or privity with Defendants, from directly or indirectly infringing API's registered Mark;

7.      For an accounting to determine the earnings and profits obtained by Defendants from their wrongful infringement of Plaintiff's Mark and from their other wrongful acts;

21

8.      For additional damages in an amount that will be proven at trial;

9.      For API's reasonable attorneys' fees and expenses of litigation; and

10.     For such other and further relief as the Court deems just and equitable.


DATED this 7th day of April, 2014.

                            PARR BROWN GEE & LOVELESS, P.C.


                            By:  /s/ James L. Ahlstrom
                                    Attorneys for plaintiff
                                    Acceleration Products, Inc

Plaintiff's Address:

1389 Center Drive, Suite 100
Park City, Utah 84098

4824-3180-6234