IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ACCELERATION PRODUCTS, INC. dba ATHLETIC REPUBLIC, a North Dakota corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ARIKOTA, INC., an Arizona corporation; ECLECT, LLC, an Arizona limited liability company; MICHAEL BIRKELAND, an individual; CAROL BIRKELAND, an individual; and KRISTOPHER BIRKELAND, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:14-CV-00252<br><br>Judge Dee Benson |

Before the court is plaintiff's motion for a preliminary injunction requesting the court to enjoin defendants from operating two Arizona sports training gyms in any way contrary to the two franchise agreements entered into by the parties. (Dkt. No. 5). The court held a hearing on the motion on June 16, 2014. At the hearing, plaintiff was represented Emily E. Duke and James L. Ahlstrom. Defendants were represented by Daniel A. Schenck. After consideration of the briefs submitted by the parties and the oral arguments presented by counsel, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Acceleration Products Inc. ("API") offers individuals and businesses the opportunity to run franchised sports training centers under the Athletic Republic trademark. API

has developed a unique system to operate its training centers that provides high-level training to athletes in a variety of different sports. API allows franchisees to use its trademarks, equipment in which API holds patents, and copyrighted sports training protocols. API licenses this system and protocols through individual franchise agreements.

## I.     The Two Franchise Locations

On May 28, 2008,  API and Arikota entered into a franchise agreement (the "Tempe Agreement") granting Arikota the right to operate an Athletic Republic training center in Tempe, Arizona.  The Tempe Agreement includes a non-compete provision wherein defendants agree to not:

> own, operate, lease, franchise, engage in, be connected with, have an interest in, or assist any person or entity in any sports training or health fitness business which is located within the Protected Territory[1] or within a 25 mile radius of any [Athletic Republic] training center.

Tempe Agreement, ¶ 11.A.

It also provides that defendants may not:

> directly or indirectly, for a period of *2 years* after the . . .termination of this Agreement . . . own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in or assist any person or entity engaged in any sports training or health fitness business that is located within the Protected Territory or within a 10 mile radius of any [Athletic Republic] training center.

Id. ¶ 11.B (emphasis added).

Nearly two years after entering into the Tempe Agreement, API and defendant Eclect entered into a franchise agreement (the "Scottsdale Agreement") granting Eclect the right to operate an Athletic Republic training center in Scottsdale, Arizona.  The Scottsdale Agreement is almost identical to the Tempe Agreement, and includes the same provisions as described above.

---

[1] The protected territory is set forth in Appendix D of the Tempe Agreement.

Additionally, in both agreements defendants agreed to be bound by certain obligations upon termination of the franchise relationship, including "immediately ceasing to operate the Training Center."[2] See Tempe and Scottsdale Agreements, 14. Defendants also agreed that they would not use API's confidential information, including its protocols, methods, processes, and copyrighted manuals "in any other business or in any manner not specifically authorized or approved in advance in writing" by API. Id. ¶ 8.G.

## II.    Termination

At some point during 2013, defendants stopped paying royalties and fees as required under both agreements and began operating the centers under the name "The Rise." By written notice dated March 28, 2014, API provided defendants with notices of termination effective March 31, 2014, based on defendants' defaults under Paragraph 13.B of the agreements. Currently, defendants still operate both centers as sports training facilities but claim that they are not in breach of either agreement. As a result, plaintiff brought the instant motion.

## DISCUSSION

### I.    Preliminary Injunction Standard

To obtain a preliminary injunction, the moving party must establish four factors: "(1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC, 562 F.3d 1067, 1070 (10th Cir.2009) (citation omitted).

---

[2] Training Center is a defined term in the Tempe Agreement and is defined as "the portion of your business that is the training center that you develop and operate pursuant to this agreement." Tempe Agreement, ¶ 1.R.

3

### a. The Scottsdale Center

In applying the above factors to this provision, the court is persuaded that a preliminary injunction is appropriate with regard to the Scottsdale center.

Here, whether plaintiff has a substantial likelihood of success on the merits depends on the validity of the agreement's non-compete provisions. The post-termination non-compete provision in the Scottsdale Agreement prohibits defendants from owning or operating any sports training facility within the protected territory for a period of two years after termination. The agreement clearly defines the geographic boundaries of this protected territory, and defendants' Scottsdale center is unambiguously within those boundaries. See Scottsdale Agreement, Appendix D. Upon applying Arizona law to this case, the court finds that the non-compete provision is valid because it is narrowly tailored and not broader than necessary to protect the legitimate interests of plaintiff. See Fitness Together Franchise Corp. v. Higher level Health, 2009 WL 2753026 (Aug. 27, 2009).

Additionally, plaintiff would suffer irreparable harm if defendants continued to operate their center contrary to the non-compete provision. The court recognizes that "the majority of courts that have considered the question have concluded that franchising companies suffer irreparable harm when their former franchisees are allowed to ignore reasonable covenants not to compete." Bad Ass Coffee Co. of Hawaii, Inc. v. JH Enterprises, L.L.C., 636 F. Supp. 2d 1237, 1249 (D. Utah 2009). Allowing defendants to ignore their contractual obligations would harm, among other things, plaintiff's goodwill, customer relationships, and relationships with other franchisees.

Next, although defendants will clearly be harmed if the injunction issues, the balance of harms weighs in favor of plaintiff because defendants chose to operate the Scottsdale center despite the covenant not to compete. Thus, any harm to defendants is self-inflicted. See Bad

Ass Coffee, 636 F. Supp. 2d at 1251.

Lastly, a preliminary injunction is not against the public interest. Here, defendants voluntarily entered into franchise agreements on two separate occasions and enjoyed the benefits of these agreements for several years. Public policy favors the enforcement of such commercial contracts. See e.g., Nilson v. JPMorgan Chase Bank, N.A., 690 F. Supp. 2d 1231, 1258-59 (D. Utah 2009) (where the preliminary injunction merely required the contract's signatories "to comply with their own contractual obligations").

Accordingly, this order immediately enjoins defendants from operating the Scottsdale center pending further proceedings in this case.

### b.    *The Tempe Center*

The court finds that plaintiff cannot meet their heavy burden with respect to the Tempe Agreement's non-compete provision. Like the Scottsdale Agreement, the protected territory in the Tempe Agreement clearly defines the geographic boundaries of the protected territory. See Tempe Agreement, Appendix D. Because defendants' Tempe location is outside of those boundaries, plaintiff is not likely to succeed on the merits in applying the agreement's non-compete provision. See id. Accordingly, the court currently will not enjoin the continued function of the Tempe center. Although the court is not issuing such an injunction, defendants now bear the risk of operating, during the pendency of this case, the center in any way contrary to the remaining provisions in the Tempe Agreement.

## CONCLUSION

Based on the foregoing, the court GRANTS plaintiff's motion in part and DENIES it in part, and hereby orders defendants to immediately cease operating the Scottsdale center pending the resolution of this case.

DATED this 7th day of August, 2014.

_____

Dee Benson
United States District Judge